UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

PETER CARNES,                               )
                                            )
        Plaintiff,                          )
                                            )
v.                                          )        Case No. CIV-21-1196-P
                                            )
KILOLO KIJAKAZI,                            )
  Acting Commissioner of the                )
  Social Security Administration,           )
                                            )
        Defendant.                          )

## ORDER

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final

decision of Defendant Commissioner denying his application for disability insurance

benefits under Title II of the Social Security Act, 42 U.S.C. § 423. Defendant has

answered the Complaint and filed the administrative record (hereinafter AR___),

and the parties have briefed the issues. For the following reasons, Defendant's

decision is reversed and remanded for further administrative proceedings.

I.  Administrative History and Final Agency Decision

Plaintiff filed his application for disability insurance benefits on October 31,

2019. AR 12. Plaintiff alleged he became disabled on September 30, 2019. AR 12,

15. The Social Security Administration denied Plaintiff's application on February

25, 2020, *see id.*, and on reconsideration on June 1, 2020. AR 12.

Plaintiff appeared with counsel and testified at an administrative hearing conducted before an Administrative Law Judge ("ALJ") on February 4, 2021. AR 33-60. On March 3, 2021, the ALJ issued a decision in which he found Plaintiff was not disabled within the meaning of the Social Security Act. AR 10-28.

Following the agency's well-established sequential evaluation procedure, the ALJ found at the first step that Plaintiff had not engaged in substantial gainful activity since September 30, 2019, the amended alleged disability onset date. AR 15. At the second step, the ALJ found Plaintiff had the following severe impairments: vitreous syneresis without detachment in the right eye and personality disorder. *Id.* At the third step, the ALJ found these impairments were not *per se* disabling as Plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of a listed impairment. *Id.*

At step four, relevant to this appeal, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform medium work. AR 18. The ALJ further explained:

> The claimant has limited depth perception and peripheral vison of the right eye. In addition, the claimant would have nonexertional limitations in that the claimant would be limited to work that is of SVP level 2 or less as defined in the Dictionary of Occupational Titles (DOT). The claimant would have the ability to understand, remember, and carry out ordinary and/or routine written or oral instructions and tasks and to set realistic goals and plans independently of others. The claimant would have the ability to interact appropriately with supervisor[s], co-workers and public as incidental to work requirements. The claimant can adapt to routine work situations and

2

changes with only occasional oversight to ensure assigned task completion.

*Id.* (footnotes omitted).

Relying on the VE's testimony as to the ability of a hypothetical individual with Plaintiff's work history, age, education, and determined RFC, the ALJ concluded Plaintiff could not perform his past relevant work. AR 24-25. Continuing to rely on the VE's testimony, the ALJ also concluded Plaintiff could perform the jobs of bag loader, kitchen helper, and hospital cleaner, each of which exist in significant numbers in the national economy. AR 25-27. Based on this finding, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, from September 30, 2019 through the date of the decision. AR 12, 27.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009).

II.  <u>Issue Raised</u>

Plaintiff contends the hypotheticals the ALJ presented to the vocational expert ("VE") were deficient, and therefore, the VE's testimony did not provide substantial support to the ALJ's findings at step five. Doc. No. 15 ("Op. Br.") at 3-7.

III.  <u>General Legal Standards Guiding Judicial Review</u>

Judicial review of Defendant's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a

whole and whether the correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). Substantial evidence "means-and means only-'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, __ U.S. __, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citations, quotations, and brackets omitted). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* (citations omitted). While a court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, a court does not reweigh the evidence or substitute its own judgment for that of Defendant. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

IV.    <u>Analysis</u>

    The issue on appeal in this case centers around the ALJ's precise meaning when he included the following in the RFC: "The claimant can adapt to routine work situations and changes with only occasional oversight to ensure assigned task completions." AR 18. Plaintiff contends that the requirement of "occasional

4

oversight contemplates "additional supervision" and therefore, "necessitated a follow up question to the VE that was never posed." Op. Br. at 4. Plaintiff explains that the term occasional means occurring up to one-third of the time," for purposes of Social Security disability evaluation. *Id.* at 5 (citing Social Security Ruling 83-10, 1983 WL 31251, at *5). He further explains that such a requirement means that the ALJ should have also asked the VE whether an employer would permit a supervisor to spend up to one-third of his workday ensuring that Plaintiff has completed his tasks. *Id.*

Defendant, on the other hand, argues that the ALJ limited Plaintiff to "only occasional" due to his difficulties with social interaction. Doc. No. 17 at 4. She explains that in including this limitation in the RFC, the ALJ was relying on Dr. Mark Englander's consultative examination, in which he noted Plaintiff experienced social and adaptation issues. *Id.* Upon reviewing Dr. Englander's examination notes, the Court finds it does not shed sufficient light on this requirement in the ALJ's RFC to discern the ALJ's precise meaning.

Dr. Englander performed his consultative examination on February 19, 2020. AR 461-67. Dr. Englander subsequently noted the following:

> Mr. Carnes' responses suggested he appeared to marginally understand test item instructions and clinical interview tasks warranting a second repetition of examination instructions. He did not recall any of three words after several minutes. He reported completion of technical programs and work using those skills. He gave all five correct calculations on Serial 7s. On serial fours, a potential measure of

5

> sustaining concentration and academic functioning, he gave all five
> correct calculations. He stated he knew the difference between right and
> wrong. Mr. Carnes' reported impatience with others or frequency of
> getting upset could indicate possible conflicts in a work setting.

AR 464. While the final sentence in Dr. Englander's observations may have some

relevance to the subject RFC requirement, it does not explain whether the ALJ

intended "occasional oversight to ensure task completion" to mean supervision as an

addition to or limitation on the amount of supervision generally required. This seems

especially unclear as it is directly linked to ensuring Plaintiff completes his tasks.

Additionally, Defendant's argument that the ALJ intended to limit Plaintiff to

less than a general level of oversight might be more compelling if he had also limited

Plaintiff's interaction with the supervisors, coworkers, and/or the public. There are

a number of cases in which courts have found consistency in an RFC in which an

ALJ limits a plaintiff's interactions and also limits them to occasional supervision.

*See Weimer v. Kijakazi,* No. 20-1850, 2022 WL 3156421, at *1 n.1 (W.D. Penn.

Aug. 8, 2022) ("The Court [] notes that [] the ALJ adequately accounted for

Plaintiff's marked limitation in interacting with others by limiting her to no work-

related interaction with the public, only occasional and superficial interaction with

co-workers, and only occasional supervision. There is no inherent inconsistency

between these findings."); *Soto v. Comm'r of Soc. Sec'y*, No. 17-10054, 2018 WL

2181098, at *11 (E.D. Mich. March 2, 2018) (finding that the ALJ's RFC was

supported by substantial evidence where a physician "noted that Plaintiff was

markedly limited in his ability to interact with the public and moderately limited in his ability to respond appropriately to coworkers and supervisors, and the ALJ addressed this statement by limiting Plaintiff to only occasional supervision and no direct contact with the public." (citation omitted)); *Blackwell v. Colvin*, No. 2:15-cv-388 AC, 2016 WL 4702823, at *3 (E.D. Cal. Sept. 7, 2016) (considering RFC that limited the plaintiff to "only occasional interaction with the general public, coworkers, or supervisors; work is isolated, with only occasional supervision"); *Loyd v. Colvin*, No. 5:12–CV–01991–LHK, 2013 WL 5290553, at *2 (N.D. Cal. Sept. 19, 2013) ("[T]he ALJ determined that all work must be essentially isolated, requiring only occasional supervision." (quotations and alteration omitted)); *Bennett v. Astrue*, No. 10-05 WDS, 2011 WL 13289834, at *2 (D.N.M. March 25, 2011) (considering RFC that required the plaintiff "to work primarily with things and not people; to perform work essentially isolated with only occasional supervision and interaction with co-workers; perform jobs entailing limited interaction with general public").

Here, however, the ALJ found that Plaintiff retained the "ability to interact appropriately with supervisor[s], co-workers and public as incidental to work requirements." AR 18. Thus, the RFC is far less clear than in the cases cited above that the ALJ intended "only occasional oversight to ensure assigned task

completion" as a limitation, rather than an addition, to the level of supervision generally expected in the work environment.

During the administrative hearing, the ALJ posed a hypothetical to the VE that reflected the language contained within his RFC, including that Plaintiff could interact appropriately with others and would require "only occasional oversight" to ensure completed tasks. AR 56-57. Based on the same, the VE testified that Plaintiff could perform the jobs of bag loader, kitchen helper, and hospital cleaner. *Id.* The ALJ ultimately relied on this testimony to find that Plaintiff was not disabled. AR 25-27. As it is unclear whether the ALJ intended "only occasional oversight" to mean a limitation on or an addition to a supervisor's general responsibility, the VE's testimony does not provide substantial support for the ALJ's decision.

In *Culbertson v. Colvin*, No. 13–cv–01913–LTB, 2015 WL 1041117 (D. Colo. March 6, 2015), the ALJ's RFC "assessment provided that [the plaintiff] should work in a supervised environment with supervision on a somewhat consistent basis." *Id.* at *6 (quotations and alterations omitted). The court noted that the hearing transcript was somewhat unclear but it appeared that the VE had identified jobs that provided "only occasional supervision." *Id.* As a result, the court reversed and remanded the matter "[b]ecause the ALJ's step five analysis relies on jobs that apparently provide only occasional supervision, [and] his conclusion at step five is not supported by substantial evidence on the current record." *Id.*

Though not wholly on point, the present case is similar to *Culbertson*. Like the RFC, it is unclear from the hearing transcript, the meaning the ALJ intended to by the "only occasional oversight" requirement in the hypothetical presented to the VE. If the ALJ intended the "only occasional oversight" to mean an additional requirement to the general supervision provided to an employee, and the VE did not understand the hypothetical in that manner, then Plaintiff may not be able to perform the jobs the VE identified. *See Salazar v. Astrue*, No. CIV-11-0960 LAM, 2012 WL 13071888, at *6 (D.N.M. Nov. 20, 2012) (remanding based on other grounds but noting "the hypothetical posed to the VE, at least as it has been transcribed in the record, is confusing and fails to include with sufficient clarity what limitations the VE is supposed to be considering," and directing the ALJ to consider the same on remand); *see also, cf., Robben v. Comm'r of Soc. Sec'y*, No. CIV-18-600-R, 2019 WL 948450, at *3 (W.D. Okla. Feb. 4, 2019) (reversing ALJ decision because "[w]hat precisely the VE assumed regarding the frequency of the sit/stand requirement [in the ALJ's hypothetical was] unclear."); *Whittington v. Berryhill*, No. CIV-16-14-JHP-SPS, 2017 WL 1133314, at *4 (E.D. Okla. March 9, 2017) ("[E]ven if the Court could find that the sit/stand option included in the claimant's RFC was intended by the ALJ to be at will, it is unclear whether the VE understood this to be what the ALJ intended, and thus likewise unclear whether the claimant can perform the jobs found by the ALJ given the need to sit or stand at will throughout the

workday."). Accordingly, the Court can only speculate as to whether Plaintiff can actually perform the relevant jobs, and this Court will not imply such a finding.

VIII.   <u>Conclusion</u>

Based on the foregoing analysis, the decision of the Commissioner is reversed and remanded for further proceedings consistent with this Order. Judgment will issue accordingly.

ENTERED this __4th__ day of _____October, 2022.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE